Frazier, J.
The defendant in error, the plaintiff below, recovered a judgment for the claimed wrongfully causing the death of Josiah Philips, against the plaintiff in error operating the Cleveland and Pittsburgh Railroad. The collision by which the deceased lost his life occurred at a point in or near the city of Steubenville, where the public highway crosses at grade the main track of the defendant’s road; where, by reason of an elevated track leading to a furnace and crossing the highway over head,persons, approaching the crossing of the main track in the direction deceased was traveling cannot by reason of the elevated track obstructing the view see a train approaching on the main track until within a short distance of the crossing. And on this occasion it is claimed no signal was given by bell or whistle of the approaching train.
At the time of the accident the deceased was traveling toward the city in a cart drawn by one horse. Counsel for plaintiff proposed to prove that deceased on other occasions, when about to pass over this crossing, stopped to look and listen for approaching trains; which testimony was rightfully excluded. But the plaintiff was permitted, in chief, to inquire of witnesses; “what kind of a man was deceased in reference to his habits in regard to carefulness in driving, management and care of horses, ’ ’ and witnesses testified they thought “he was one of the most careful men in driving horses in the neighborhood.’’ In the admission of such testimony the judge below erred. •
Another question more difficult of solution, and, as a ques *68 tion of practice, of much more importance is made in the record, Rebecca Hibbetts and Bertha Stevenhart, two young girls, were the only persons who saw the deceased approaching the crossing. They were sitting near the crossing, and one of them spoke to the deceased. They had testified upon a former trial, and it is not questioned that the proper foundation is laid for showing, as affecting their testimony, what they testified to on the former trial, by competent testimony.
The defendant called a's a witness T. A. L. Thompson, Esq., and showed that he was the official stenographer for Jefferson county, Ohio, appointed by the court of common pleas under á statute of Ohio, and was acting as such at the time of the former trial, and as such official stenographer he took down in short hand the testimony,including the testimony of Rebecca Hibbetts and Bertha Stevenhart; that he then had present his notes of the testimony; that such notes are correct as to what they testified upon such former trial.
Counsel for defendant asked the witness to turn to his notes of the testimony of the Hibbitt’s girl, and tell the jury what her answers were at' the former trial to certain questions; to which the plaintiff objected. The judge sustained the objection, holding and deciding that the stenographer may use his notes to refresh his memory, and then if he can remember, he can answer. He must have an independent recollection before he can answer. The witness stated: ‘ I rely entirely upon my notes taken at the time. I have no independent recollection”. The same rulings were made as to the testimony of Bertha Stevenhart.
It is claimed by counsel for plaintiff in error, that its admission is warranted by section 5242a Revised Statutes, 89 Ohio Laws, 148. This statute, like most of the reported cases and comments of text writers when treating of stenographer’s notes, has reference to the reproduction of the • testimony of a deceased or absent witness given upon a for *69 mer trial, and not for the purpose of affecting the testimony of a witness who is present and testifies, but whose testimony it is claimed materially differs from what he testified on the former trial, for the purpose of impeaching his testimony. Nor is it a question whether the notes of a stenographer are the best or only evidence for that purpose. In Brice et al. v. Miller, 15 S. E. Reporter 272, in the case of an absent witness,it is held: “The stenographer’s notes of the testimony of a witness is not the best evidence of such testimony so as to prevent any other person who was present from testifying in relation thereto.’’
Counsel for defendant in error cite a number of authorities in support of the proposition that the notes of a stenographer, like other writings made by the witness at the time of the occurrence, can only be used to refresh his memory. In Thompson on Trials Sec. 504, under headnote “Former Testimony, How Proved’’, the author says; “It is not error to refuse to allow a transcribed phonographic report of the testimony of a witness given on a former trial, to be read to the jury for the purpose of contradicting him, unless the legislature has declared that such reports shall be evidence. The reason is that such stenographic reports are not seen by the witness, and that they may be fair and truthful reports of the testimony of the witness, and may not. ’ ’ The author adds: “But the rule is different where the testimony has been taken down by a commissioner and duly certified by him,although not read over by the witness before signing.’’
It has long been an established rule of evidence that a witness who has made entries in a book or reduced to writing facts which he is required to do in the regular order of his employment,on the day they purport to have been made, though he has now no independent recollection of the facts mentioned in it, if he remembers that at the time he knew the facts were correctly stated, may be permitted to use it to refresh and assist his memory; but the writing itself must *70 be produced in court, in order that the other party may, by cross-examination, have the benefit of the witness refreshing his memory by every part. The American courts have carried the rule farther than it has been carried in England, by admitting the writing itself to go in evidence to the jury in all cases where it was made by the witness at the time it occurred, for the purpose of preserving the memory of it, if, at the time of testifying, he can.recollect nothing farther han that he had accurately reduced the whole transaction to writing. 1 Greenleaf on Evidence Sec. 437 and note 3 to 12 edition; Moots v. The State, 21 Ohio St. 653; Shriedley v. The State, 23 Ohio St. 130.
If entries or writings, made by a person in the performance of a private employment, are admitted in evidence upon the testimony of the person who made them that they are correct, although he has no recollection of the facts; whj on principle and reason should not the testimony of a witness taken in short hand by an officer of the court appointed for that purpose, and whose sworn duty it is to correctly report the testimony, be admitted when it is competent to prove it, although the officer at the time of testifying has no independent recollection of what the witnesa testified.
The violent changes effected in the modes of procedure by the courts, in the last few years, the progress of science, the startling and violent inroads effected by the telegraph, the telephone, the phonograph, the application of electricity as motive power and to other purposes with the application of photography in evidence, and the employment of court stenographers, have placed the line of relevancy far beyond what would be recognized by the courts of even twenty years ago.
If law is “the perfection of human wisdom’’,it should keep pace with science and the progress of our people, and institutions, or those who administer it, are not worthy of the trust committed to them.
*71 Long and well established rules and precedents should not be lightly regarded, or hastily departed from, but whenever a rule or precedent is at variance with reason and the condition and habits of our people, by the introduction of new methods of procedure and the manner of conducting business, the rule should be changed, or the precedent disregarded. When the reason of the rule ceases, the rule itself should cease.
“Our courts have never adopted the common law, except “so far as it is reasonable in itself, suitable to the condition and business of our people, and consistent with the letter and spirit of our federal and state constitutions and statutes. But where it has been'foud wanting in either of these requisites, our courts have not hesitated to modify it to suit our circumstanes',or, if necessary, wholly to depart from it.” Bloom v. Richards 2 Ohio St. 387.
A recent author says: “At the present time the. custom of employing a court stenographer, whose duty it is to take down the testimony of the witnesses examined, is nearly universal. He is usually a sworn officer of the court, and his notes, or transcripts of them, possess an official character and authenticity which render them of great value in case of the subsequent death or absence of a witness. Where such records exist, their production on the subsequent trial should, it seems, be required under the rule requiring the production of the best evidence.” Underhill on Evidence, page 171.
In Rice on Evidence, vol. 1, p. 399, referring to a stenographer’s report of the testimony taken upon a former trial by a witness since deceased, says, “There is no substantial reason why the ' testimony taken in such trial .should not be read. The party was on the stand, and could have been cross.-examined, and the same opportunity for scrutiny and for contradiction existed as if the jury had agreed upon a verdict. ”
Carey, Boyle & Mullins, and J. Dunbar, for plaintiff.
Trainer & Bon, for defendant.
“Where, upon a witness denying that he has changed his testimony as given upon a previous trial, the stenographer who took the testimony produces and reads bis notes in full, which the witness recognizes as correct, all the testimony of such witness taken on the previous trial is admissible in support of the claim that the witness has changed his testimony. Bennett v. Syndicate Ins. Co., 39, Minn. 254.” 2 Rice on Evidence 658.
It is a rule of universal application that a party must produce the best evidence within his control, and though the notes of a stenographer may not be the best evidence in the sense that it excludes all others, experience teaches that it is more reliable than unassisted memory, and in practice is consulted with deference by counsel and judges in cases of controversy or doubt as to what a witness said.
In the light of principle and reason, supported by the better and more recent authorities, we hold, where it is claimed a witness who testified upon a former trial has changed his testimony,an official stenographer who took the testimony at the former trial, who produces his notes in short hand of the testimony of the witnesses, may read his notes'to the jury as affecting the testimony of the witness, if he remembers that at the time the testimony was correctly taken, and that the notes contain all the testimony of such witness, although at the time he is called upon to testify he has no independent recollection of what the witness did testify.
The judgment is reversed, and cause remanded for a new trial.